**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

UNITED STATES OF AMERICA,

                Plaintiff,

    v.

D&D ADVISORS, LLC,
a Missouri limited liability company

                Defendant.

Case No. 14-00054-01-CR-W-DGK

## <u>PLEA AGREEMENT</u>

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **<u>The Parties.</u>** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Tammy Dickinson, United States Attorney, and Roseann A. Ketchmark, Assistant United States Attorney, and the defendant, D&D Advisors, LLC, a Missouri limited liability company ("the defendant"), represented by Charles W. German and Jason M. Hans. David A. Vorbeck, the Manager of D&D Advisors, LLC, is authorized to enter into this agreement on behalf of the defendant.

The defendant understands and agrees that this plea agreement is only between D&D Advisors, LLC, and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

1

**2. <u>Defendant's Guilty Plea.</u>**  The defendant agrees to and hereby does plead guilty to Count One of the information charging the defendant with a violation of 18 U.S.C. § 1957, that is, money laundering.  By entering into this plea agreement, the defendant admits having knowingly committed this offense by virtue of the conduct of an agent with apparent authority to act on behalf of the defendant, and admits being guilty of this offense.

**3. <u>Factual Basis for Guilty Plea.</u>**  The parties agree that the facts constituting the offense to which defendant is pleading guilty are as follows:

<u>D&D Advisors, LLC</u>

The defendant, D&D Advisors, LLC, was created and organized with a principal place of business at 684 SE Bayberry Lane, Ste 101, Lee's Summit, Missouri 64063 and registered with the Missouri Secretary of State on or about February 8, 2002.

Dean McBride was, at all times relevant herein, a financial planner, a licensed insurance agent, and the sole owner of Cowboy Financial Advisors, LLC (CFA).   Dean McBride also, at all times relevant herein, co-owned Cowboy Financial, LLP with his wife, Linda McBride. From 1992 until approximately 2010, Dean McBride's estate planning often involved viatical investments and life settlement investments.[1]   Beginning in approximately 2002, D&D Advisors, LLC served as Manager for several other LLCs created by McBride for life settlement investment transactions conducted with several of McBride's clients.

---

1 Both viatical and life settlement investments involve the sale of an existing life insurance policy to a third party for more than its cash surrender value, but less than its net death benefit. Typically, the third party becomes the new owner of the policy, pays the monthly premiums, and receives the full benefit of the policy when the insured dies.   The term "viatical" is typically used when the insured is terminally or chronically ill.

Case 4:14-cr-00054-DGK    Document 4    Filed 03/04/14    Page 2 of 19

<u>George and Hazel Philley / Philley Insurance, LLC</u>

In 2000 George and Hazel Philley applied for and were issued two insurance policies with the owner as "George C. Philley and Hazel R. Philley Revocable Living Trust, dated April 14, 1995" (Philley Trust).   The first policy was issued on May 3, 2000, through Travelers (MetLife) with a policy number ending in #1377 and with death benefits of $500,000.00.   The second policy was issued on June 13, 2000, through Transamerica with a policy number ending in #6514 and with death benefits of $500,000.00.

On July 31, 2005, George and Hazel Philley appointed David Vorbeck as ancillary trustee of their trust.   On or about August 17, 2005, Philley Insurance, LLC was organized at the direction of Cowboy Financial Advisors LLC.   Philley Insurance, LLC registered its Articles of Organization with the Missouri Secretary of State.   Design Etc, LLC, as the Majority Member of Philley Insurance, LLC, appointed D&D Advisors, LLC as Manager in the Operating Agreement for Philley Insurance, LLC, dated August 19, 2005.

<u>Policy #1 – Travelers (MetLife) #1377</u>

On October 15, 2005, George and Hazel Philley (as co-trustees of the "George C. Philley and Hazel R. Philley Revocable Living Trust, dated April 14, 1995") collaterally assigned the death benefits of the Travelers (MetLife) #1377 policy, to Philley Insurance, LLC, making Philley Insurance, LLC, the beneficiary of the $500,000.00 death benefits, but keeping the Trust as the owner of the policy.

3

On July 4, 2009, David Vorbeck (as ancillary trustee of the Philley Trust) also requested a transfer of the ownership of Travelers (MetLife) #1377 policy from the Philley Trust to Philley Insurance, LLC. This transfer made Philley Insurance, LLC the owner of the policy and not just the beneficiary of the death benefits. The transfer was finalized by MetLife on July 24, 2009.

George Philley died on March 21, 2007 which left Hazel Philley as the only one who was insured under the policy. Hazel Philley died on June 13, 2010. On June 24, 2010, D&D Advisors, LLC (as Manager of Philley Insurance, LLC) filed a Death Claim Form with MetLife, asking that the $500,000.00 in death benefits be issued to Philley Insurance, LLC in a lump sum payment.

On June 24, 2010, MetLife wire transferred $500,000.00 into the Philley Insurance, LLC bank account. On July 7, 2010, Philley Insurance, LLC transferred $460,090.00 into the bank account of Dean McBride's business, Cowboy Financial Advisors (CFA). On July 8, 2010, Philley Insurance LLC transferred $29,910.00 to the bank account of D&D Advisors. On July 9, 2010, Philley Insurance, LLC transferred $10,000.00 to D. Tinskey, who was the heir of George and Hazel Philley.

Policy #2 Transamerica #6514

Sometime after August 17, 2005, when Philley Insurance, LLC was created at the direction of Cowboy Financial Advisors LLC, ownership and beneficiary rights of the Philley's Transamerica #6514 policy were transferred from the Philley Trust to the Philley Insurance, LLC.

Again, George Philley died in March of 2007, leaving Hazel Philley as the only person insured under this policy as of the date of his death.

4

In October of 2009, Philley Insurance, LLC entered into a "Viatical Settlement Contract" in which Philley Insurance, LLC sold the Transamerica #6514 policy to Milestone for $95,000.00. On the Viatical Settlement Contract, Philley Insurance, LLC was listed as the "Viator" and Hazel Philley was listed as the "Insured" as George Philley had died in March of 2007. D&D Advisors, LLC, as Manager of Philley Insurance, LLC, which owned the policy, signed the Viatical Settlement Contract at the direction of Designs Etc, LLC, as Majority Member of Philley Insurance LLC. Hazel Philley signed the Viatical Settlement Contract as the Insured. D&D Advisors, LLC, as Manager of Philley Insurance, LLC and at the direction of Designs Etc, LLC, as Majority Member of Philley Insurance LLC, instructed Milestone that the $95,000.00 proceeds be wired to the business account of D&D Advisors, LLC.

On January 14, 2010, proceeds from the Viatical Settlement Contract were wired to the account of D&D Advisors in the amount of $95,000.00. The balance of the D&D Advisors account on January 13, 2010, was only $8,200.00.

Money Laundering SUA (Wire Fraud)

Philley Insurance, LLC, fraudulently caused Milestone to wire transfer $95,000.00 (from Milestone's third party escrow producer's account maintained at The Bank of New York located in New York, New York) to the bank account of D&D Advisors (account number ending in 9716 maintained at Union Bank in Missouri) by fraudulently claiming on the Viatical Settlement Contract that "Viator" (Philley Insurance, LLC) had an insurable interest in the Insured (Hazel Philley) at the time the Policy was issued (6/13/2000). Philley Insurance, LLC was not even created until August 17, 2005.

This fraudulent claim led Milestone to believe that no other entity or person had been promised proceeds of the death benefits and that no other entity or person had a security interest in the policy. However, Philley Insurance, LLC knew when it entered into the Viatical Settlement Contract with Milestone, that several other investment clients of Dean McBride had been promised proceeds from the policy or security interests in CFA's rights in the policy. These other clients were never paid what Dean McBride had promised them.

Money Laundering of the $95,000.00

When the $95,000.00 proceeds of the viatical contract were wired to the bank account of D&D Advisors on January 14, 2010, the account balance was only $8,200.00. On January 15, 2010, D&D Advisors transferred $90,000.00 to the bank account of Philley Insurance, LLC. The account balance of Philley Insurance, LLC was $2,400.00 before the deposit. On that same day, January 15, 2010, $60,000.00 was transferred from the Philley Insurance, LLC bank account to the bank account of Dean McBride's business, Cowboy Financial Advisors, LLC.

VICTIMS: Three Client Investments in Philley Insurance, LLC

#1 Rodney and Virginia Elmore

On August 5, 2005, Rodney Elmore as Trustee of the Rodney C. Elmore Living Trust entered into an investment transaction with Dean McBride. Rodney Elmore purchased an investment which they understood to be secured by the two life insurance policies on the lives of George and Hazel Philley. Specifically, Dean McBride's company, Cowboy Financial Advisors, LLC (CFA), borrowed $125,000.00 from Rodney Elmore as Trustee of the Rodney C. Elmore Living Trust in the form of a "PROMISSORY NOTE/LOAN AGREEMENT." The promissory note that McBride presented to Rodney Elmore stated that

6

the principal of the note was to be paid by CFA from the proceeds of a possible sale of the two Philley insurance policies or the proceeds from the death benefits of the two Philley insurance policies, each having a face death benefit amount of $500,000.

Neither Rodney Elmore nor his heirs received any proceeds from the sale of the Philley Transamerica #6514 policy. Neither Rodney Elmore nor his heirs received any proceeds from the death benefits of the Philley Travelers (MetLife) #1377 policy.

#2 Gwendolyn DeRuyter

On December 20, 2005, Gwendolyn DeRuyter entered into an investment transaction with Dean McBride. Gwendolyn DeRuyter purchased an investment which she understood to be secured by the two life insurance policies on the lives of George and Hazel Philley. Specifically, Dean McBride's company, Cowboy Financial Advisors, LLC (CFA), borrowed $150,000.00 from Gwendolyn DeRuyter in the form of a "PROMISSORY NOTE." The promissory note that McBride presented to Gwendolyn DeRuyter stated that the principal and interest due under the note was secured by CFA's Security Interest in "Philley Insurance, LLC", which was the beneficiary of the Philley life insurance policies.

Neither Gwendolyn DeRuyter nor her heirs received any proceeds from the sale of the Philley Transamerica #6514 policy. Neither Gwendolyn DeRuyter nor her heirs received any proceeds from the death benefits of the Philley Travelers (MetLife) #1377 policy.

7

<u>#3 Jamie Murphy</u>

On February 3, 2009, Jamie Murphy entered into an investment transaction with Dean McBride.   Jamie Murphy modified an investment (made previously by her father, James V. Wiegand, before his death) which she understood to be secured by the two life insurance policies on the lives of George and Hazel Philley.   Specifically, a company called Designs Etc, LLC, which was managed by Dean McBride's wife (Linda McBride) modified a loan of $95,000.00 with Jamie Murphy in the form of a "PROMISSORY NOTE MODIFICATION AND EXTENSION AGREEMENT."   The promissory note that McBride presented to Jamie Murphy stated that the death benefits of the two George and Hazel Philley life insurance policy are pledged by Designs Etc. LLC as collateral security for the principal and interest owed to Jamie Murphy under the note.

Neither Jamie Murphy nor her heirs received any proceeds from the sale of the Philley Transamerica #6514 policy.   Neither Jamie Murphy, nor her heirs received any proceeds from the death benefits of the Philley Travelers (MetLife) #1377 policy.

4.    **<u>Use of Factual Admissions and Relevant Conduct</u>.**    The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining defendant's guilt and, in the event the Court rejects this plea agreement and the defendant elects not to withdraw its guilty plea in accordance with Rule 11(c)(5) and Rule 11(d)(2)(A), appropriate sentence.

5.    **<u>Statutory Penalties</u>.**    The defendant understands that upon defendant's plea of guilty to Count One of the information charging a money laundering violation, the maximum fine the Court may impose is the greater of $500,000, or a fine of not more than twice the amount of the criminally derived property involved in the transaction, and may impose probation

8

up to five years.   The defendant further understands the Court must impose a mandatory special assessment in the amount of $400.00 which must be paid in full at the time of sentencing.   The defendant further understands that this offense is a Class C felony.

6.   **Sentencing Procedures.**   The defendant and the United States acknowledge, understand and agree to the following:

a.   in determining the appropriate sentence, the Court may consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission.   While these Guidelines are advisory in nature, and the Court ordinarily would have the discretion to impose a sentence either less than or greater than the court-determined advisory Guidelines range, in this instance the parties agree, pursuant to Rule 11(c)(1)(C), that the Court must impose sentence as set forth in (b.) below.

b.   D&D Advisors, LLC is to pay restitution by cashier's check payable to the Clerk of the Court in the amount of $370,000.00 at the time of the sentencing hearing for the benefit of Virginia Elmore in the amount of $125,000.00, Gwendolyn DeRuyter in the amount of $150,000.00, and Jamie Murphy in the amount of $95,000.00; no fine, probation or community service shall be imposed against D&D Advisors, LLC; D&D Advisors, LLC is to surrender all governmental licenses; D&D Advisors, LLC is to file a notice of dissolution pursuant to Section 347.137 RSMo, with the Missouri Secretary of State within seven days of the sentencing hearing; D&D Advisors, LLC is to conduct only those activities necessary to wind up its affairs pursuant to Section 347.139 RSMo; and after winding up its affairs, D&D Advisors, LLC is to file articles of termination pursuant to Section 347.045 RSMo.

c.   If the court accepts this plea agreement, it must inform the defendant that sentence will be imposed in accordance with this agreement of the parties. If the court rejects this plea agreement, it must, on the record and in open court, inform the parties that the court rejects the plea agreement, advise the defendant personally that because the Court is rejecting the plea agreement the Court is not required to impose sentence in accordance with the agreement of the parties, give the defendant an opportunity to withdraw defendant's guilty plea, and further advise the defendant that if the plea is not withdrawn, the Court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.   If the Court rejects this plea agreement, the defendant shall have the opportunity to withdraw its guilty plea in accordance with Rule 11(c)(5) and Rule 11(d)(2)(A).   Should the defendant elect such withdrawal, the parties will be restored to their respective claims and defenses prior to the entry of such guilty plea.

9

**7. Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to life insurance transactions or viatical and life settlement investment transactions involving Dean McBride for which it has venue and which arose out of the defendant's conduct described above.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives defendant's right to challenge the initiation of additional charges if defendant breaches this agreement. The defendant expressly waives the right to assert a statute of limitations defense if additional charges are initiated following defendant's breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against defendant following a breach of this plea agreement, defendant will not be allowed to withdraw defendant's guilty plea.

10

**8.** **<u>Preparation of Presentence Report</u>.** Pursuant to Rule 32(c)(1)(A)(ii), the parties agree to jointly request that the Court waive preparation of a presentence report in this case. The defendant understands that, if the Court does not waive preparation of a presentence report in this case, the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of defendant's criminal activities. The defendant understands these disclosures are not limited to the count to which defendant has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

**9.** **<u>Withdrawal of Plea</u>.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the Court's acceptance of this Rule 11(c)(1)(C) plea agreement. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw defendant's plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal.

10.  **Agreed Guidelines Applications.**  With respect to the application of the Sentencing Guidelines to this case, in the event the Court rejects this plea agreement and the defendant elects not to withdraw its guilty plea in accordance with Rule 11(c)(5) and Rule 11(d)(2)(A), the parties stipulate and agree as follows:

a.  The Sentencing Guidelines do not bind the Court and are advisory in nature. However, if the court accepts this Rule 11(c)(1)(C) plea agreement, the Court is bound to impose the sentence agreed to by the parties, as set forth in paragraph 6 above;

b.  The applicable Sentencing Guidelines section regarding restitution, remedial orders, community service, compliance programs, probation and special assessment for the offense of conviction is Chapter Eight – Sentencing of Organization; and

c.  The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that defendant will make during the plea colloquy, support the imposition of the agreed-upon sentence and Guidelines calculations contained in this agreement.

11.  **Effect of Non-Agreement on Guidelines Applications.**  The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections.   As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing in the event the Court rejects this plea agreement and the defendant elects not to withdraw its guilty plea in accordance with Rule 11(c)(5) and Rule 11(d)(2)(A).

12.  **Change in Guidelines Prior to Sentencing.**  The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea

12

agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

**13.** **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

a. oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

b. comment on the evidence supporting the charge in the information;

c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court does not impose the sentence agreed to by parties in this agreement; and

d. oppose any post-conviction motions for reduction of sentence, or other relief.

**14.** **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that defendant has been advised of, understands, and knowingly and voluntarily waives the following rights:

a. the right to plead not guilty and to persist in a plea of not guilty;

b. the right to be presumed innocent until defendant's guilt has been established beyond a reasonable doubt at trial;

c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

d. the right to confront and cross-examine the witnesses who testify against defendant;

e. the right to compel or subpoena witnesses to appear on defendant's behalf; and

13

f.   the right to remain silent at trial, in which case defendant's silence may not be used against defendant.

The defendant understands that by pleading guilty, defendant waives or gives up those rights and that there will be no trial.   The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, defendant's answers may later be used against defendant in a prosecution for perjury or making a false statement.

**15.   <u>Waiver of Appellate and Post-Conviction Rights</u>.**

a.   The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement defendant waives any right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

b.   The defendant expressly waives any right to appeal defendant's sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence.   However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal defendant's sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

**16.   <u>Financial Obligations</u>.**

By entering into this plea agreement, the defendant understands and agrees to the following financial obligations:

a.   In the event the Court rejects this plea agreement and the defendant elects not to withdraw its guilty plea in accordance with Rule 11(c)(5) and Rule 11(d)(2)(A), the Court must order restitution to the victims of the offense to which

14

the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with all other uncharged related criminal activity in the event the Court rejects this plea agreement and the defendant elects not to withdraw its guilty plea in accordance with Rule 11(c)(5) and Rule 11(d)(2)(A).

b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

c. If the defendant has not satisfied the restitution order in full at the time of sentencing, the defendant will fully and truthfully disclose all assets and property in which defendant has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

d. If the defendant has not satisfied the restitution order in full at the time of sentencing, within 10 days of the Court's acceptance of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

e. If the defendant has not satisfied the restitution order in full at the time of sentencing, the defendant hereby authorizes the USAO to obtain a credit report pertaining to defendant, which will be used by the USAO to evaluate the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

f. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $400 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of defendant's fulfillment of this obligation at the time of sentencing.

g. The defendant certifies that defendant has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that defendant will make no such transfers in the future.

15

h.   In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets.   The defendant agrees not to contest any collection of such assets.   In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

17.   **Waiver of FOIA Request.**   The defendant waives all rights, whether asserted directly or by a representative, to request or receive, or to authorize any third party to request or receive, from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18.   **Waiver of Claim for Attorney's Fees.**   The defendant waives all claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19.   **Defendant's Breach of Plea Agreement.**   If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally

16

misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw defendant's plea of guilty.

The defendant also understands and agrees that in the event defendant violates this plea agreement, all statements made by defendant to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by defendant before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against defendant in any and all criminal proceedings. The defendant waives any rights that defendant might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by defendant subsequent to this plea agreement.

**20. <u>Defendant's Representations.</u>** The defendant acknowledges entering into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that defendant is satisfied with the assistance of counsel, and that counsel has fully advised defendant of defendant's rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, defendant's attorneys or any other party to induce defendant to plead guilty.

17

**21.    No Undisclosed Terms.**    The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

**22.    Standard of Interpretation.**    The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings.    The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

Tammy Dickinson
United States Attorney


Dated:    3/4/2014                                  */s/ Roseann A. Ketchmark*
                                                       Roseann A. Ketchmark
                                                       Assistant United States Attorney

On behalf of D&D Advisors, LLC, as its Manager, I have consulted with D&D Advisors, LLC's attorneys and fully understand all of D&D Advisors, LLC's rights with respect to the offense charged in the information.    Further, on behalf of D&D Advisors, LLC, as its Manager, I have consulted with D&D Advisors, LLC's attorneys and fully understand its rights with respect to the provisions of the Sentencing Guidelines.    On behalf of D&D Advisors, LLC, as its Manager, I have read this plea agreement and carefully reviewed every part of it with D&D Advisors, LLC's attorneys.    D&D Advisors, LLC understands this plea agreement and D&D Advisors, LLC voluntarily agrees to it.

Dated:    3/4/2014                                  */s/ David A. Vorbeck*
                                                       D&D Advisors, LLC, Defendant
                                                       by David A. Vorbeck, in his capacity as
                                                       Manager of D&D Advisors, LLC

18

We are defendant D&D Advisors, LLC's attorney. We have fully explained to defendant the rights defendant has with respect to the offense charged in the information. Further, we have reviewed with defendant the provisions of the Sentencing Guidelines which might apply in this case. We have carefully reviewed every part of this plea agreement with defendant. To our knowledge, D&D Advisors, LLC's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 3/4/2014          /s/ Charles W. German
                          Charles W. German
                          Attorney for Defendant


Dated: 3/4/2014          /s/ Jason M. Hans
                          Jason M. Hans
                          Attorney for Defendant

19